## EDWARD L. CHAFFEE *vs.* CHARLES A. BLAISDELL.

Worcester.    October 6. — 22, 1886.    DEVENS & W. ALLEN, JJ., absent.

In an action of replevin for "one Emerson piano, style C, No. 30964," the defendant, from whose possession such a piano was taken on the writ, claimed title as an innocent purchaser from A. The plaintiff offered evidence tending to show that he lent a sum of money to B., who gave him a promissory note therefor. The plaintiff then offered in evidence the following papers: 1. Said note, signed "A. per B., Atty." 2. A writing on the back of the note, by which it was agreed that the plaintiff should "hold the assignment of the lease on piano until this note is paid," and, upon failure to pay the interest, the plaintiff should "take the piano in the lease and sell the piano and apply the proceeds to pay this note," and which was signed "A. per B., Atty." 3. An instrument, signed by C., to whom B. paid the money lent by the plaintiff, and stating that, in consideration of a certain sum paid to him by the plaintiff, C. transferred and assigned to the plaintiff all C.'s "right, title, and interest in and to one Emerson piano, style C, No. 30964, being specified in a certain lease." 4. An instrument, in which goods "hired and received of C." were described as "one Emerson piano, style C, No. 30964;" and which was signed as follows: "Witness my hand and seal. A. per B., Atty." There was no evidence of the existence of any written power of attorney from A. to B. The judge excluded the several papers offered in evidence; and ruled that the evidence introduced was insufficient to make out the plaintiff's case. *Held*, that the plaintiff had no ground of exception.

REPLEVIN of "one Emerson piano, style C, No. 30964." Trial in the Superior Court, without a jury, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence tending to show that, on October 2, 1883, one S. K. Elliott obtained from the Boston Loan Company, of which the plaintiff was an officer, $175, and gave for it a promissory note for that amount, payable to the Boston

Loan Company one month from that date, and signed "Nannie T. Elliott per S. K. Elliott, Atty. under seal." Upon the back of said note was the following agreement, dated October 2, 1883 : " It is hereby agreed that E. L. Chaffee shall hold the assignment of the lease on piano until this note is paid, both principal and interest, and if I fail to pay the interest on demand, said Chaffee shall take the piano in the lease and sell the piano and apply the proceeds to pay this note. Nannie T. Elliott per S. K. Elliott, Atty. under seal." Immediately after the $175 was paid to S. K. Elliott, he went, in company with a representative of the plaintiff, who also represented the Boston Loan Company, to Walbridge Brothers, a firm dealing in furniture and kindred articles in Boston, and paid them the money, and they, at his request, delivered to the plaintiff's representative the following paper : " Oct. 2d, 1883. In consideration of the payment to us of two hundred and fifty dollars by Edward L. Chaffee, we hereby transfer and assign to the said Edward L. Chaffee all our right, title, and interest in and to the following goods, viz. : one Emerson piano, style C, No. 30964, and one piano stool, said goods being those specified in a certain lease dated Feb'y 6, 1883, and numbered 4172. Walbridge Bros."

The plaintiff then called the defendant as a witness, who testified, without contradiction, that the piano taken from him upon the writ in this action was an Emerson piano, No. 30964 and style C, which he bought, in connection with a quantity of furniture, of Nannie T. Elliott, and paid cash for; that she said that she owned it, and that there was no lien or incumbrance upon it ; that she was then living in the house with her father, S. K. Elliott, in Milford; and that, when they came to Milford to live, which was in 1884, they brought the piano with them. The plaintiff also introduced evidence that they afterwards went away from Milford, and were last heard from as living in Glens Falls, in the State of New York, in May, 1885; that the plaintiff sent letters to S. K. Elliott about that time, which were not answered, and also sent a messenger to Fitchburg, where they at one time lived after leaving Milford, to find them, and ascertained that they had gone away from there. The plaintiff then offered in evidence the paper referred to as a lease in the assignment from Walbridge Brothers to the plaintiff, which was numbered

4172, and in which the goods were stated to be hired and received of Walbridge Brothers, and were described as "one Emerson piano, style C, No. 30964, one piano stool, one piano cover." This paper was signed as follows : " Witness my hand and seal. Nannie T. Elliott by S. K. Elliott, Atty."

There was no evidence of the existence of any written power of attorney from Nannie T. Elliott to S. K. Elliott. The assignment from Walbridge Brothers to the plaintiff, the note, and the agreement thereon, were admitted in evidence *de bene*, against the defendant's objection. The defendant objected to the admission of the lease from Walbridge Brothers upon grounds similar to those of the previous objections, namely, that there was no evidence that S. K. Elliott had authority from Nannie T. Elliott to act as agent for her in signing any papers or agreements. The judge thereupon sustained the objection ; and excluded all the papers as inadmissible to sustain the plaintiff's title or right of possession to the property.

The plaintiff contended, and asked the judge to rule, that, on the evidence of possession of the identical property named in the lease and Nannie T. Elliott's dealings with it, there was a presumption that S. K. Elliott had authority to sign, and, further, a ratification of S. K. Elliott's act in signing the lease; and that, by the assignment from Walbridge Brothers, the plaintiff took all their rights in the piano mentioned in it. The judge declined so to rule; ruled that all the evidence introduced and offered was insufficient to make out the plaintiff's case ; and found for the defendant. The plaintiff alleged exceptions.

*C. W. Bartlett*, for the plaintiff. 1. It was a conceded fact at the trial, that the piano in question originally belonged to Walbridge Brothers. No question was made as to this, but it was understood and assumed to be so. A part of the instruction which the plaintiff requested, and which the judge declined to give, was " that, by the assignment from Walbridge Brothers, the plaintiff took all their rights in the piano mentioned in it." As the title to the piano originally was in Walbridge Brothers, and was so conceded to have been, their transfer to the plaintiff clearly operated to convey a good title to the plaintiff, unless in the mean time Walbridge Brothers had made some other disposition of the property, and the judge should have so

ruled. Such subsequent disposition of the property (if any had been made by Walbridge Brothers prior to their conveyance to the plaintiff) it was the duty of the defendant to establish, if he would defeat the title conveyed by Walbridge Brothers to the plaintiff. If there was no competent evidence of the execution and acceptance of the lease of the piano by Walbridge Brothers to Nannie T. Elliott, then there was no competent evidence in the case that Walbridge Brothers had ever parted with any interest in the piano prior to their transfer to the plaintiff; and the title of the plaintiff stood complete, irrespective of said alleged lease. The testimony of the defendant as to the mere hearsay declaration of Nannie T. Elliott that she owned the piano, was clearly incompetent and insufficient to prove title in her, as against the conceded and proved facts in the case.

2. The plaintiff is not to be prejudiced, because, in the opinion of the court below, he failed to do what it was wholly unnecessary for him to do; namely, to show that a lease of the piano had been made to Nannie T. Elliott, and that she had failed to comply with its terms, so that Walbridge Brothers and their assigns stood repossessed of their original title. If the defendant claimed a title to this piano from Nannie T. Elliott, he was bound to show, as against the title proved by the plaintiff derived from Walbridge Brothers, that she had derived from them a title to the property superior to that of the plaintiff.

*G. B. Williams*, for the defendant.

GARDNER, J. The defendant was in possession of the piano at the time it was replevied. He claimed to be an innocent purchaser of the same from one Nannie T. Elliott, who said that she owned the piano. The plaintiff attempted to show title in himself by a transfer and assignment to him by " Walbridge Brothers " of all their right, title, and interest in one " Emerson piano, style C, No. 30964, and one piano stool, specified in a certain lease dated Feb'y 6, 1883, and numbered 4172." The plaintiff failed to show any title in " Walbridge Brothers." He had not shown possession of the piano, and delivery to him. The assignment was inadmissible.

The note given by S. K. Elliott to the Boston Loan Company for $175, and the indorsement upon the note, were each signed " Nannie T. Elliott per S. K. Elliott, Atty. under seal." The

plaintiff also offered the lease from Walbridge Brothers, signed as follows : " Witness my hand and seal, Nannie T. Elliott by S. K. Elliott, Atty." There was no evidence of the existence of any written power of attorney from Nannie T. Elliott to S. K. Elliott, nor that she knew that he had executed any papers in her name, nor that she had ratified their execution. The possession of the piano by Nannie T. Elliott, and its sale by her to the defendant, would create no presumption of authority in S. K. Elliott to act for her, or of her ratification of his past acts. *Combs* v. *Scott*, 12 Allen, 493. The several papers purporting to be executed by S. K. Elliott as attorney for Nannie T. Elliott were properly rejected. When these papers were excluded, it is difficult to see what evidence there was in the case, upon which the plaintiff could maintain his action. There was no evidence showing the identity of the piano. The plaintiff failed to show what was meant by " Emerson piano, style C, No. 30964," and there was no evidence by which it could be inferred that there was only one of this kind of piano. The plaintiff failed to prove that the defendant had possession of the identical property claimed by the plaintiff.

After rejecting the written evidence offered, the Superior Court properly refused to give the ruling requested, and rightly ruled that the evidence introduced was insufficient to sustain the plaintiff's case.                              *Exceptions overruled.*